Anderson J.
delivered the opinion of the court.
By section 1, of the act of assembly of the 21st of February 1872 (Sees. Acts of 1871-’72, ch. 114, p. 91) the charter of the Fredericksburg, Orange and Charlottesville Railroad Company is extended for a period •of five years from the first day of March 1872, for the purpose of enabling the company to complete the railroad, and to extend the same.
For that purpose, and to pay certain debts, the said company, by section 2, is authorized and empowered to borrow a sum of money, not exceeding twelve hundred thousand dollars, and at a rate of interest not exceeding seven per cent, per annum; and to secure the money so borrowed, to issue coupon or registered bonds, in such sums as the directors may deem best; and the president and directors are authorized and empowered “to execute a lien on all the property, rights and franchises of said company, existing at the time of the execution of such lien, and which may *125 thereafter he acquired by said company,” to secure the payment of moneys so borrowed and the interest accruing thereon: and said company may sell bonds at less than par.
By section 5, it is provided, that if the said company shall fail to complete the said railroad from the town of Fredericksburg, as far as Orange Court-house, with a single track, of the quality and capacity therein described, and the depots therein mentioned, on or before the 1st day of May 1878, “the company shall forfeit to the State of Virginia, their corporate franchises and rights, together with their railroad track, road bed and all work and materials thereon, and other property, to hold the same as a trustee for the benefit of herself, the corporation of Fredericksburg and other private stockholders of the original Fredericksburg Railroad Company, according to the respective amounts of the stock in that company originally subscribed and held by them.”
Section 6 limits the power of the company in the issue of bonds, until after the road is fully completed -to Orange Court-house, to $600,000.
Section 7 provides that this act shall not be in force until the said company shall file in the office of the board of public works their acceptance of the same and its conditions, signed by the president and secretary of the company, with the common seal of the company affixed thereto. This condition, it is admitted by the pleadings, was complied with by the company.
On the first day of [November 1872, the said company executed a mortgage or deed of trust, conveying all its property, real and personal, rights and franchises, to secure the payment of principal and interest' of its bonds for $700,000, which the company deter *126 mined to issue. And for default in payment of interest, or principal, for ninety days after demand, the upon the written request of the holders of not ^ess ^an twenty-five per cent, of the bonds then outstanding, is required to sell. The bill alleges that bonds of the aggregate par value of only $480,000 were issued; and that of them the plaintiffs became the purchasers, and the owners, of $323,000, secured by the mortgage.
The material question we are to consider is: Is the mortgage subject to the conditions of forfeiture prescribed by the said 5th section of the act of assembly?
The court is of opinion, that the railroad company, upon accepting the amendment and extension of its charter upon the terms of the said act of assembly, became immediately invested with authority to execute its bonds, and a deed of trust or mortgage upon its franchises and corporate rights, and upon the railroad track and road bed, and upon all its property, real and personal, to secure the payment of said bonds, principal and interest; but subject to its liability to the forfeiture of its said franchises and corporate rights, and its entire property, if the railroad was not completed from Fredericksburg to Orange Court-house on or before the 1st of May 1873, as prescribed by the 5th section of the act. Though the authority to execute the bonds and the mortgage, in favor of the company, and the condition of forfeiture in favor of the state, are contained in different sections, they are both parts of the same act, and in fact constitute one contract; and must be taken and construed together as parts of a whole, so that, if possible, effect be given to the whole and to every part.
If the act should be construed as investing the company with the right to alien or mortgage all its fran *127 chises, rights and property, free from the right of the state to a forfeiture of the same, if the road was not completed within the prescribed time, the 5th would be wholly inoperative. It gives no security to the state that the money authorized to be borrowed would be faithfully applied to the completion of the road, or that the road would be completed within the time limited, which seems to have been the cardinal object of the legislature in confirming the charter of this company and in extending and enlarging its franchises. What assurance could it give ? The very property which is to be forfeited to the state, by the company on its failure to comply with the condition, becomes vested in others by the mortgage, and leaves nothing for the state. For it is very evident that the foreclosure of the mortgage by sale would leave nothing for the equity of redemption upon which the forfeiture could operate. But the idea that only the equity of redemption was to be subject to forfeiture is repugnant to the very terms of the act, which require the forfeiture, not of the equity of redemption, but of the identical subject which the 2nd section authorized to be conveyed in trust or mortgage. Such an idea is also incompatible with the last clause of the section, which provides that upon such forfeiture the State of Virginia shall have right to enter upon and take possession of said railroad track, road bed, &e., and hold the same as a trustee for the benefit of herself, the corporation of Fredericksburg, and the other private stockholders; which she could not do if the forfeiture was subject to the mortgage, and the railroad track, road bed, and all the property had been conveyed to others, and were liable any hour to be sold toward satisfying the mortgage. Taking both sections together, they must be construed to give *128 to the company the right to mortgage the property, subject to the state’s right of forfeiture, in ease the road is not completed by the time specified. It is evident that the company so understood it. Ho further evidence is needed, that it was so understood by both the company and the legislature, than the terms of the act of assembly of 26 March 1878, extending the time for the completion of the road, and the acceptance of that act by the company.
This construction gives effect to both sections; not to 2nd section as fully and effectually as it would by the omission of the 5th section. But that was not intended. The legislature did not intend to grant the privilege, except with this restriction. If the company did not regard it as beneficial they were under no constraint to take it. They must have regarded it as conferring a benefit, or they would not have accepted it. It is true the restriction if it were known (and the company was bound in common honesty to make it known) would embarrass the sale of the bonds. They could not be sold at all perhaps if thrown upon the market. Ho one could be induced to purchase who could not repose a personal confidence in the company that every dollar so raised would be strictly applied to the completion of the railroad in compliance with the terms of the charter, and thus save the forfeiture. If the bonds could be sold, and the money faithfully and honestly so applied, the security would be greatly strengthened, and the property and franchises saved from forfeiture, and the loan would be amply secure. A loan upon such security could only be effected through the personal confidence reposed in the company by the lender, or the purchaser of the bonds, that the money would be faithfully and honestly applied. And it may be that the *129 company in accepting the act, calculated that they would be able to raise the money from those who kuew them, and who would confide in them, they would honestly apply the money so raised as required by the law which authorized them to make the loan, and in a way that would give ample securit-y to the holder of the bonds. They could not have expected to raise the money by throwing the bonds upon the general market.
It would seem that they have not done so. The bill alleges that bonds to the amount of about $480,000 were issued, of which they the plaintiffs are the owners and purchasers of $323,000. Ho claim is asserted to the residue. They do not say that they are purchasers for value. It does not appear that they were. If they were, what has become of the money. It does not appear that any part of it was expended upon the work on the railroad. The bill alleges that even the interest, although demanded, has not been paid, not a dollar of it, to save the road and all the corporate property of the company and its franchises from sale under the mortgage. Could that be if there had been a bona fide sale of those bonds, for value—for money? Mr. Silliman, who claims to be the owner and purchaser individually of $139,000 of these bonds, is the president of the railroad company. And he and Z. P. Boyer, who is one of the parties to whom the act of 21st of February 1872 was granted, claim to be the joint-owners of $23,000 more. The Miners Trust Company Bank and said Boyer claim to own together $93,500, and the Miners & Trust Company Bank claim to own, the appellees counsel say, $68,000. The amount does not clearly appear from the exhibit filed with the bill. But according to the statement of the bill it would be less. They are the plaintiffs in this *130 suit, and from their relations to this company and to each other, are chargeable with notice of the terms of the act of assembly which authorized the execution of the mortgage or deed of trust, under which they claim. They are the holders of all the bonds to which any claim has been asserted in this suit. And if any money was received upon the sale of those bonds, the company being bound in all fidelity to apply it to the construction of the railroad and to the payment of the accruing interest on their debt, and it not appearing that one dollar from such source has been applied for the benefit of the railroad or the payment of interest, it raises a strong presumption, when we consider the relation of those who claim to be the owners and purchasers of the bonds to the railroad company and to one another, that the company has not received any money for said bonds.
The court is therefore of opinion that the appellants are not innocent purchasers for value, and holders of said bonds without notice of the provisions of the act of assembly by which the said company derived their authority to execute a mortgage to secure their payment, which was subject to forfeiture, if they failed to complete the rc-od as far as Orange Court-house, &c., by the time specified in the act. They may be, presumed to have had actual notice of said restriction on the power of executing a mortgage. If they had not such notice it was their own fault. Persons dealing with corporations must take notice of whatever is contained in the law of their organization, and they must be presumed to be informed as to the restrictions or conditions annexed to the grant of power, by the law by which the corporation is authorized to act. Pearce v. Madison & Ind. R. R. Co., 2 How. U. S. R. 441; Zabriskie v. Cleveland R. R. Co., 28 How. U. S. R. 381. In *131 every instance (Mr. Justice Miller said, in delivering the opinion in which a majority of the court concurred, in the Floyd Acceptances case, 7 Wall. U. S-. 680), a person making a contract with the government, through its officers or agents, must look to the statute under authority of which the agent or officer professes to act, and see for himself that his contract comes within the terms of the law. The same rule would apply, a fortiori, to persons making contracts with the agents or officers of bodies corporate. Mr. J. Miller further holds, in the above case, that the contract by ■bill of exchange stands on no different footing, with reference to the authority of the officer to bind the government. And again, “one who takes a negotiable note or bill of exchange purporting to be made by an agent, is bound to enquire as to the power of the agent.” (See also 31 Illinois R. 192; 42 Id. 273; 23 Barb. 10.) In Clark v. City of Des Moines, 19 Iow. R. 209, the corporation is bound only when its agents keep within the limit of their authority. And again, “Negotiability will not validate obligations which are •not binding for want of power to issue them. 23 N. Y. 464, 452; 1. A. L. Reg. (N. S.) 290.
Coupon bonds are put upon the footing of negotiable instruments, and are not liable, in the hands of an innocent holder, to the equities which attach to ordinary bonds. But their negotiability cannot enable the holder to subject property conveyed by deed of trust or mortgage for their security, which the grantor had no right to convey, or where he had a right to convey under restrictions, or conditions, no further than the restrictions or conditions will allow. Every purchaser of railroad bonds should look to the charter or statute, under authority of which they were issued and the mortgage was given to secure their payment.
*132 The court is of opinion, that no constitutional question is involved in this case with regard to the impair-of contracts. The construction given to the 5th section of the act, is a construction given to the con- . tract itself; for it is a part of it, and a stipulation which is a part of a contract, though it may modify it, or maiie t]he contract different from what it would be without it, cannot be-said to impair the obligation of the contract.
The court is also of opinion, that the company having failed to complete the railroad from Fredericksburg to Orange Court-house, in the manner prescribed by the act of February 21st 1872, by the 1st of July 1873 (the extension of time allowed by the act of March 26, 1873), the forfeiture on that day became absolute and complete. And the state having entered and elected to hold to the forfeiture, “no inquisition, or judicial proceedings, or inquest, or finding of any kind, was required to consummate such forfeiture.” Staats v. Board, 10 Gratt. 400; Wild’s lessee v. Serpell, Id. 405; Hale v. Branscum, Id. 418.
TJpon the whole, the court is of opinion, that there is no error in the decree of the' Circuit court of Bichmond, of the 2d day of July 1875, and that the same be affirmed.
Decree aeeirmed.